23-1859, Ebrahimi v. Siddiqui. And we're going to begin with oral argument for the appellant from Mr. Patel.  The issue here today is that the district court, in concluding that Mr. Ebrahimi was capable of paying the over $5,200 in costs that Wexford and Siddiqui sought, was an abuse of discretion. The undisputed record before the district court showed that in July of 2018, when Mr. Ebrahimi filed his case, he was granted leave to proceed in formal papyrus, and he had roughly $233 in his prison trust account balance. The statements submitted in connection with his objection to Wexford and Siddiqui's bill of costs later showed that as of July 22, he had $1,663. And then at the time of the filing of the bill of costs, he had $959. And then at the end of September, when the statement was submitted, he had $932. So it's fair to say he never gets over $5,000. It increases never more than what, $2,000, something like that? Yeah, $1,400 over the course of about four years. And there's no evidence in the record of him receiving any regular income or anything like that. Although, what is the court supposed to infer from the lines in the account statements that refer to payroll adjustments? Is Your Honor referring to the $10 amounts? Yeah, I think one was $13, one was $9 something. But they have the word payroll in it, payroll adjustment. My understanding is that sometimes he does piecework, things like that, for which he receives some nominal income. Certainly nothing substantial. Sometimes it's gone below $10, I believe the statements show. Did the counsel, he was represented by counsel in the district court, right? Correct, he was represented by myself and Ms. Allen. Did the district court alert you to the fact that she was thinking of imposing costs, give you an opportunity to address the issue? Well, when Wexford and Siddiqui submitted their bill of costs. And in that objection, tell me, what did you say? Did you address his future, his probable future? Yes, his future? Yeah, as to exactly his capacity to pay going forward. Yes, certainly we did. He has, he's currently 72 years old. He has some health issues, which was, you know, the sort of underlying reason behind the case. And he's serving a life sentence without the possibility of So you did, he was represented by counsel. Counsel had an opportunity to address the, specifically the issue of costs and replying to the motion, the motion of the opposition. And you tell me you did address his future and you basically said, you know, that's what I'm trying to push you on. I'm trying to find out what did you exactly say about his future? In his, in his sworn affidavit, he stated that he is serving a life sentence. He has nothing beyond what is in his prison trust account. One complicating factor was that we submitted the trust account statement itself after submitting the objection. And the reason for that was that after Wexford submitted its bill of costs, the timing of setting up calls with the prison and the logistics of that and the lead time required for that, and to request him to send us a copy of the prison account statement, didn't leave sufficient time to submit the actual statement until after the bump in his assets. He obviously got money from somewhere, somehow, someplace. When we got the statement and filed it, after the objection was already due. But even taking that bump into account, it still is eclipsed by the amount of And what did, and in her order, what did she say about the future and about his capacity to pay in the future? I'll quote it, and it was, in my view, perfunctory. She stated that his account records clearly demonstrate that he has received ample funds since 2018 and he has not demonstrated that he cannot pay the costs now or at some point in the future. Some point in the future, that's all she said, right? Correct. Okay. And the first reason why that's an abuse of discretion is that it's totally out of line with that same district court's earlier rulings. At least three of them, under pretty similar facts, she found that the non-prevailing parties were indigent and declined to award the costs. One of those parties was due to be discharged in seven years, and that's the Arce case. Another, in five years, I'm sorry. Another was going to be discharged in seven years, that's the Smith v. Wexford case. And then another in 23 years. Now, none of those were serving life sentences and were facing costs awards that were substantial. Is it established as a fact that that bump in his income was because of a COVID payment? That wasn't in the record before because we didn't learn about that explanation until after, and, you know, we would ask this When you say you didn't learn until after, can you be a little more specific after when? After receiving the award, the adverse ruling, we had a phone call with Mr. Ibrahimi explaining to him the basis on which she made the ruling, and that he pointed out that, oh, that was the COVID payment. It wasn't an issue, and there was a, you know, language barriers, that sort of thing that sort of prevented it from coming up earlier. Were there any, was any attempt made to ask for reconsideration in the district court? No. Okay, no reconsideration. And because, again, it was because the $1,600 bump is still far less than anything he has ever had. There was never anything even close to $5,200. Counselor, what are the real-world consequences of his having this debt on his prison account? How does the prison administer this now? If you were to, if we affirm the district court's decision, he's got this, he's got this thing hanging over him. How does that affect his life in prison? Well, at least as to court costs, my understanding is that they're, they're on the previous month's income at 20% for each case. Now, whether... So they'll be taking 20% out of his account if he, if he, in fact, earns some money. For court filing fees, yes. As to these, I'm not, I'm not entirely sure how a judgment would be, would be taxed against him, whether anything would be left or whether... I'm he had his last trip to the commissary, in effect? I mean, is this thing, is he deprived of the use of his funds until he pays this thing, and if so, how much? I'm sorry, can you repeat the question? Well, if he's, is he deprived of the use of his funds going forward until he pays this whole thing off, or how much of his Thank you, Mr. Patel. I had planned to reserve three minutes for rebuttal. I think we've moved into that time. Judge Ripple, did you have any further questions? That's okay. Thank you. All right, thank you, Judge Oxtoby. Thank you. Thank you, Mr. Patel. Is it Mr. Crea? Crea. Crea. We'll turn to you now for argument on behalf of the appellate. May it please the Court. My name is Patrick Crea, representing Dr. Muhammad Siddiqui and Wexford Health Sources. The district court's order granting Dr. Siddiqui and Wexford's bill of costs should be affirmed. Ibrahimi failed to meet his burden in providing the district court with sufficient evidence to overcome the presumption of awarding costs under Rule 54D and support... Costs for this kind of thing awarded regularly in that district for people who have been granted informal pauperous status. Your Honor, I'm not certain I could be able to respond to the normal level of regularity, but for the cases that counsel has cited, Ibrahimi has cited, where the same district court opted to not award costs, those cases were where the claims proceeded to trial or, you know, at least survived the summary judgment stage as this case did not, or those plaintiffs provided much more information to the district court than Ibrahimi did here. In this case, we have an instance where Ibrahimi only provided his sworn declaration and a one-page statement providing a three-month window of his inmate trust account while at Pinkneyville, and the district court reviewed that transactional statement, compared it to his declaration, and stated that his testimony, his declaration, stating that his financial status from 2018 had not changed much and found that that was contradicted by his transactional account history where he had almost eight times more the amount of money when that account history started. You know, $1,600 compared to a little over $200 back in 2018. Mr. Ibrahimi had spent over $700 in the two months that that transaction history encapsulates, and that's much greater than the amount he had when he was permitted to proceed as a pauper in 2018, and that was the amount, the full extent of the record that the district court had in determining whether or not Mr. Ibrahimi had met his burden in not showing. How in the, given the time frame that the defendant had here, or the what was he supposed to do? He had your motion, he had to answer your motion, and from what we've heard from counsel, it's pretty hard to get in touch with his client and figure out which end was up. Couldn't he, they just about, they didn't even get the account thing in time. Watch, let's have a chance to ask questions. What was the, where did they fall down? It seems to me your whole lawyer. Well, your honor, Ibrahimi's counsel has stated that he was aware that Mr. Ibrahimi was working while in prison. That may have been a source of the payroll adjustments that were on the transaction account history. There could have been some, a evidentiary offer made to the district court about what the amount of money is he's making, why Ibrahimi believes that that's not sufficient to be able to pay for these funds. There was the mention of the COVID payment that was part of the transactional history. That was never brought to the district court's attention, so the district court has very limited information as to why this amount in the transaction history is so high compared to him saying that he has, he declaratively and conclusively states I do not have the ability to pay this award, but there's no supplemental information about why he's not able to. It's just conclusive statements, and I that and relying on it now on appeal is precisely why the district court not abused its discretion. It was not made aware of that information. It had, it based its decision off of the declaration and the one-pay transaction history, so. Of course, the district court could have asked a couple of questions about what she had before her, and gotten a much better view of this thing, right? But that's potentially the case. I think to your point earlier, your honor, about seeking a motion to reconsider if they had learned more information about, you know, what the true nature of his financial history was, but what the more specific information about the entries in the account history statement. Counsel stated that he had, he learned about the COVID payments and the payroll adjustments at the time he received that statement, and it was submitted to the court after the declaration. That could have been an opportunity where counsel could have provided more information about what Mr. Ebrahimi's true financial situation was. But even on the information the district court did have, you know, Mr. Ebrahimi's counsel cites some cases. Do you have any cases where a district court knows that there's not ever more than 1,200 or 1,400 in someone's account? They previously qualified for IFP status. They are serving a life sentence. They say they are not working. They're in their 70s and have health issues, and they were still found to be able to pay 5,000 or more in costs. There are instances where an inmate will have to pay costs, and it's similar to what counsel was stating, where they may not have fees to cover an entire amount, but they're, you know, taxed against the amount of income that they are, that is with them while they're in prison, and they're able to pay it at the rate of what their income is on their trust fund statement. Why didn't the district court do that? Why didn't the district court, the district court thought there was some basis of saying he'd have some income going forward. Rather than sticking with the whole amount, why didn't you say, all right, you're going to pay this amount going forward? I believe the district court viewed the financial status has not changed since 2018, looks at this transactional statement at the time that he's filing this declaration saying that my status hasn't changed, and sees that that is not true. That's not an accurate representation of his true financial status because the account history shows this large increase in funds, which we now know is due to a COVID payment, that he has these payroll adjustments that shows that he's receiving income of some sort while in prison, and the district court found that because the financial statement that he failed to meet his burden. That's the standard here. Can we say that she actually made findings of fact on all these points you've just made? The finding that I would say that is in the order is along the lines of, though Mr. Ebrahimi claims his financial status hasn't changed since 2018, there are these different sums in the transaction trust fund account that contradict that. That is in the district court's order in awarding costs, and in addition, in the context of overcoming the strong presumption of costs in Rule 54d, Ebrahimi failed to meet the first step of showing inability to pay costs, but that's to say nothing of his failure to meet the second step as well of the reasonableness of the costs and with a good faith of the party and the closeness of the issues. I think these are separate issues that Mr. Ebrahimi also fails in. I think Mr. Ebrahimi claimed that this was a close case because it was a 22-page summary judgment order, but a review of that order shows this was not a close case, that Dr. Siddiqui had no knowledge of the back pain, that Mr. Ebrahimi agreed and didn't contest that Dr. Siddiqui had adequately treated the back pain, that the denial of the immediate referral to a cardiologist was done by a and the district court found in the summary judgment order there was simply no evidence Dr. Siddiqui caused any degree of harm, and as to Wexford, Ebrahimi failed to evidence an underlying constitutional violation, he failed to point to any policy or practice on his claim that there was an improper policy or practice, and he offered no proof of other constitutional violations by other prisoners. So how close could this case really have been? And Ebrahimi certainly didn't seek reconsideration or seek an appeal of that summary judgment order. Is there authority for the district court taking into consideration the merits of the case in determining whether to oppose costs? The cases from this circuit state that to overcome the presumption of costs and to apply an indigency exception to overcome the presumption of costs, you have to first show an inability to pay costs, which the district court found that Ebrahimi did not do here, and there's a second step showing that the costs were reasonable and that their party acted in good faith and that the issues were close in order to find that the indigent plaintiff should not have to, or indigent losing party shouldn't have to pay fees. So that's our extrapolation of the second prong of the rule? Correct. Those factors are part of the second prong of when to apply the indigency exception. According to our case law. Yes. I just wanted to point out that for the examples that Ebrahimi cited for when the district court sustained an objection to costs, two of those went to trial. The one instance, the Arce case that he pointed out, was an instance where Arce elaborated on his employment prospects. He gave it a copy of his full commissary account and assets where he only had $50 to his name and in this case Ebrahimi only conclusively stated, I can't work and I don't have the ability to pay this. So for all those reasons, we ask that the district court's order granting Dr. Sudipna Wexler's cost be affirmed. Thank you very much Mr. Cray. Mr. Patel, you've used up most of your rebuttal time but we're gonna give you some more. Let's give him two minutes and why don't you come forward Mr. Patel for rebuttal argument. Thank you and I'll make this brief. To a point Judge Ripple, you raised earlier, what this court is left to review is a pretty pretty thin ruling from from Judge Rosenstengel and I think that goes to precisely what this court dealt with in an earlier case, Whitehop v. American Medical Association. In that case, the judge, the district court, just like the district court here, essentially repeated the evidence before it and then concluded that the copying costs and deposition costs were reasonable. It wasn't a ruling on the issue of indigency but I think why it's important here is that this court concluded based on that. It said, wait a minute, these numbers don't add up. It was a $3,000 award for copies which would amount to, you know, 13,000 pages of copies and that just didn't add up. The same is true here. We have data points of $200, $1,600, and $900 and nothing further. Again, and that just doesn't add up with a cost award of over $5,000. And now to the other point about the merits of the case, the good faith of Mr. Ibrahimi in bringing the case, that two-prong analysis is correct but the district court here didn't even reach that second step when it declined to find that Mr. Ibrahimi was indigent. And so whether or not Mr. Ibrahimi brought this action in good faith, whether the issues in the case were close, are not an issue today. Although on that point I will say that this case did pass merits review. It did proceed to discovery and as my friend pointed out, there was a detailed summary judgment ruling which ultimately was not in Mr. Ibrahimi's favor but it is as far from saying that if the action was not brought in good faith or that the issue was not close. Thank you very much Mr. Patel and thank you very much to your firm for handling the case. Thank you. We appreciate that and also Mr. Gray, thank you for your oral argument. The case will be taken under revisement. We'll now move...